# United States Court of Appeals for the Federal Circuit

---

**ALEXANDER S. ORENSHTEYN,**
*Plaintiff-Appellant,*

v.

**CITRIX SYSTEMS, INC.,**
*Defendant-Appellee.*

---

2011-1308

---

Appeal from the United States District Court for the Southern District of Florida in No. 02-CV-60478, Judge Adalberto Jordan.

---

**ON MOTION**

---

Before, NEWMAN, LINN, and REYNA, *Circuit Judges.*

NEWMAN, *Circuit Judge*, dissents from the order granting the motion to dismiss.

LINN, *Circuit Judge.*

## O R D E R

Citrix Systems, Inc. ("Citrix") moves to dismiss as premature Alexander S. Orenshteyn's ("Orenshteyn")

appeal of an October 1, 2010, order granting in part a motion for sanctions. Orenshteyn opposes.

On April 6, 2002, Orenshteyn filed a complaint against Citrix alleging patent infringement. During the course of litigation, the district court granted in part Citrix's motion for sanctions against Orenshteyn and his prior counsel, and referred the matter to a magistrate judge for a report and recommendation to determine the amount of sanctions. Subsequently, the district court granted Citrix's motion on the merits for summary judgment of invalidity. Orenshteyn appealed, seeking review of the district court's invalidity determination and the order granting sanctions. The district court has not yet made a final determination regarding the amount of sanctions.

Citrix contends that the portion of Orenshteyn's appeal concerning the order granting sanctions is premature because that order is not a final, appealable decision. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 964 (Fed. Cir. 1997). We agree.

By statute, this court has jurisdiction over an appeal of a decision of a district court if it is "final" under 28 U.S.C. § 1295(a)(1) or if it is an interlocutory order as specified in 28 U.S.C. § 1292. The district court's decision on the merits—its decision on validity—is final and reviewable by this court. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988) ("[A] decision on the merits is a 'final decision' . . . whether or not there remains for adjudication a request for attorney's fees attributable to the case."). But the district court's decision granting sanctions is a separate order which is not final and appealable until the district court has decided the amount of sanctions. *See White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 452 (1982) ("Unlike other judicial

relief, the attorney's fees . . . are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action to be proved at trial."); *McCarter v. Ret. Plan for the Dist. Managers of the Am. Family Ins. Grp.*, 540 F.3d 649, 652 (7th Cir. 2008) ("[T]he upshot of *White's* approach is that decisions on the merits and decisions about attorneys' fees are treated as separate final decisions, which must be covered by separate notices of appeal—each filed after the subject has independently become 'final.'"); *see also Falana v. Kent State Univ.*, 669 F.3d 1349, 1360 (Fed. Cir. 2012); *View Eng'g*, 115 F.3d at 964.

In rare circumstances, the doctrine of pendent appellate jurisdiction allows federal courts of appeals limited discretion to review a ruling that is not independently appealable if jurisdiction exists over another related ruling. *Cf. Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50-51 (1995) ("[W]e have not universally required courts of appeals to confine review to the precise decision independently subject to appeal."). Thus, the only issue here is whether this court should exercise pendent jurisdiction over Orenshteyn's appeal of the sanctions order. We conclude that we should not, following Supreme Court guidance that the exercise of pendent jurisdiction is limited to exceptional circumstances.

The Supreme Court in *Swint* provided two essential reasons why pendent jurisdiction should be limited. First, Congress specifically provided district courts the authority to certify an interlocutory order as appealable under 28 U.S.C. § 1292(b) (applicable to this court under 28 U.S.C. § 1292(c)(1)), and § 1292(b) is undermined if appellate courts take jurisdiction over appeals from non-final orders in the absence of district court certification. *Swint*, 514 U.S. at 46-47. Second, the Supreme Court has express rulemaking authority to expand the list of appeal-

able interlocutory orders, implying that this is not a determination to be made by judicial decision of a circuit court. *See id.* at 48 (citing 28 U.S.C. §§ 1292(e), 2072).

After *Swint*, it is clear that a court of appeals may have pendent jurisdiction when the appealable and non-appealable decisions are "inextricably intertwined" or when review of the non-appealable decision is necessary to review the appealable one. *See id.* at 51. While *Swint* did not "definitively or preemptively settle . . . whether or when it may be proper for a court of appeals, with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appealable," the Supreme Court nevertheless found that pendent jurisdiction *did not exist* when the non-appealable decision was neither "inextricably intertwined with" nor "necessary to ensure meaningful review of" the appealable decision. 514 U.S. at 50-51. Thus, notwithstanding the qualifying language in *Swint*, this court cannot exercise pendent jurisdiction unless at least one of the *Swint* tests is met without contradicting the central holding of *Swint*. Moreover, both the Supreme Court and this court have subsequently used the tests propounded in *Swint* to evaluate whether pendent jurisdiction exists, further reinforcing that the tests in *Swint* are the relevant standard. *See Clinton v. Jones*, 520 U.S. 681, 707 n.41 (1997); *Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1376-77 (Fed. Cir. 2012); *Falana*, 669 F.3d at 1359-62; *Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1348-50 (Fed. Cir. 2007); *Intel Corp. v. Commonwealth Scientific & Indus. Research Org.*, 455 F.3d 1364, 1369, 1371 (Fed. Cir. 2006); *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1345 (Fed. Cir. 2000). *But see iLOR, LLC v. Google, Inc.*, 550 F.3d 1067, 1073 n.1 (Fed. Cir. 2008) (declining to exercise pendent appellate jurisdiction *sua sponte* without citing the *Swint* tests); *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 846-47 (Fed.

Cir. 2008) (exercising pendent jurisdiction, without citing *Swint*, based on "'. . . the extent that review of the appealable order will involve consideration of factors relevant to the otherwise nonappealable order.'" (quoting *Intermedics Infusaid, Inc. v. Regents of the Univ. of Minn.*, 804 F.2d 129, 134 (Fed. Cir. 1986))).

Relying on *Swint*, this court found no pendent jurisdiction in *Falana* based on similar facts to those present here. 669 F.3d at 1359-62. In *Falana*, Kent State sought to appeal a final district court decision on inventorship along with a non-final award of unquantified attorney fees based on an exceptional case finding. *Id.* at 1359-60. This court declined to exercise pendent jurisdiction over the unquantified award of attorney fees, notwithstanding the final judgment on inventorship. *Id.* at 1359-62. *Falana* is our closest controlling precedent.

This court's holding in *Falana* is consistent with the holdings of other circuits declining to exercise pendent jurisdiction over unquantified sanctions or attorney fees. Several circuits declined to exercise jurisdiction over unquantified attorney fees when appealed with final decisions even before *Swint*. *See Cooper v. Salomon Bros.*, 1 F.3d 82, 85 (2d Cir. 1993); *Pennsylvania v. Flaherty,* 983 F.2d 1267, 1275-77 (3d Cir. 1993); *Becton Dickinson & Co. v. Dist. 65, United Auto., Aerospace & Agric. Implement Workers*, 799 F.2d 57, 61-62 (3d Cir. 1986); *S. Travel Club, Inc. v. Carnival Air Lines, Inc.*, 986 F.2d 125, 129-31 (5th Cir. 1993); *Pa. Nat'l Mut. Cas. Ins. Co. v. Pittsburg*, 987 F.2d 1516, 1520-21 (10th Cir. 1993). In light of *Swint*, the Seventh Circuit expressly overruled its decisions allowing pendent jurisdiction over unquantified attorney fees. *McCarter*, 540 F.3d at 653-54. While the Eleventh Circuit continued to assert that it had discretion to exercise pendent jurisdiction over an award of attorney fees after *Swint*, it declined to do so. *Hibiscus Assocs. Ltd.*

*v. Bd. of Trs. of the Policemen & Firemen Ret. Sys.*, 50 F.3d 908, 921-22 (11th Cir. 1995). Even though the D.C. Circuit has a more permissive interpretation of *Swint* than most circuits and did not create a "blanket rule" prohibiting pendent jurisdiction over unquantified attorney fees, the D.C. Circuit declined to exercise pendent jurisdiction over unquantified attorney fees and anticipated that review of such orders "will be rare exceptions." *Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 676, 678-80 (D.C. Cir. 1996); *see also Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1133-34 (D.C. Cir. 2004).

There have been rare cases in which courts in other circuits have taken jurisdiction over an unquantified award of attorney fees, but these were special cases, such as when the award actually met one of the *Swint* tests for pendent appellate jurisdiction. *See Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 451, 453-54 (5th Cir. 1998) (exercising pendent appellate jurisdiction when the sanction of unquantified attorney fees was "'inextricably intertwined'" with a final sanctions order suspending the appellant from the practice of law); *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 289 F. App'x. 927, 932 (6th Cir. 2008) (unpublished) (finding a final award of statutory penalties allowed pendent jurisdiction over an "intertwined" unquantified award of litigation expenses based on the same statute); *see also In re Dyer*, 322 F.3d 1178, 1186-88 (9th Cir. 2003) (taking jurisdiction over a sanctions award in the context of the "flexible finality standards" of bankruptcy law, but "stop[ping] short of adopting a similar rule in non-bankruptcy cases"). These are the exceptions that prove the general rule that an unquantified award of attorney fees is not inherently or universally appealable under pendent jurisdiction, and instead must meet the same standards as any other decision to qualify for pendent appellate jurisdiction.

Therefore, the circuits, including this one, are in general agreement that an unquantified award of attorney fees does not usually warrant the exercise of pendent jurisdiction. Unlike *Thornton* and *M & C* in which the final decision and the non-final award of attorney fees had essentially the same legal basis, the finding of invalidity and the sanctions in the present case have different legal bases requiring different legal analyses. Thus, this court finds no indication in the present case that the unquantified sanction is "inextricably intertwined" with or necessary to review the final decision on the merits. *See Swint*, 514 U.S. at 51; *Clinton*, 520 U.S. at 707 n.41. This court does not assert that *Swint* precludes the exercise of *all* pendent jurisdiction. *See Helifix*, 208 F.3d at 1345. This court simply follows *Falana* in declining to exercise pendent jurisdiction over the unquantified sanction because to do so would be inconsistent with the standards established in *Swint*.

The dissent errs in relying on *Akron Polymer Container Corp. v. Exxel Container, Inc.,* 148 F.3d 1380 (Fed. Cir. 1998), and *Majorette Toys (U.S.), Inc. v. Darda, Inc.*, 798 F.2d 1390 (Fed. Cir. 1986). In *Akron*, this court appeared to exercise jurisdiction over an unquantified award of attorney fees with a final judgment of inequitable conduct. 148 F.3d at 1381, 1384. However, *Akron* never discussed the jurisdictional or finality issues. *Id.* Generally, when an issue is not discussed in a decision, that decision is not binding precedent. *See Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises."); *see also New v. Oklahoma*, 195 U.S. 252, 256 (1904). Beyond the general proposition, this court previously found that *Akron* was not binding precedent on the jurisdictional or finality issue.

> [W]e recognize that this court has reviewed an award of attorney fees without a quantified amount. *E.g., Akron Polymer Container Corp. v. Exxel Container, Inc.,* 148 F.3d 1380, 47 USPQ2d 1533 (Fed.Cir.1998). However, in *Akron,* the finality issue was raised neither by the parties nor *sua sponte* by the court. Because *Akron* did not confront and decide the same issue, it is not precedent on the question before us.

*Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1346 (Fed. Cir. 2001). Thus, this court is not bound to follow *Akron*.

*Majorette* is also not controlling for three reasons: *Majorette* is dicta with regard to exercising jurisdiction over unquantified attorney fees; it is distinguishable from the present case; and it was superseded by *Swint*. First, *Majorette* asserted that the court had jurisdiction over what, after *Budinich*, would be a final decision on the merits and a non-final award of unquantified attorney fees. *See Majorette*, 798 F.2d at 1391-92. While the dissent notes the appeal was challenged under 28 U.S.C. § 1295(a) and § 1292, Dissent Op. at 5, the court actually took jurisdiction over the entire case by analogizing to an appeal of a judgment of patent infringement that is final but for an accounting of damages under 28 U.S.C. § 1292(c)(2). *Majorette*, 798 F.2d at 1391-92. The court in *Majorette* had no statutory basis upon which to draw such an analogy. However, when the case was actually decided, there was no mention of the attorney fees. *Darda Inc. U.S.A. v. Majorette Toys (U.S.) Inc.*, No. 86-921, 1987 WL 36118 (Fed. Cir. Mar. 30, 1987) (nonprecedential). Therefore, the portion of the order in *Majorette* taking jurisdiction over the attorney fees appears to be dicta as it was unnecessary to decide the case, and hence is not controlling over the present case.

Additionally, the interpretation of *Majorette* in *Johannsen v. Pay Less Drug Stores Nw., Inc.*, 918 F.2d 160 (Fed. Cir. 1990), confirms that the focus of *Majorette* was taking jurisdiction over the merits of the case. Discussing *Budinich*, the court in *Johannsen* suggested that the decision *on the merits* was final, notwithstanding the unquantified attorney fees. *Johannsen*, 918 F.2d at 163-64. Nothing in *Johannsen* suggests that the unquantified award of attorney fees was directly appealable as final under § 1295, contrary to the interpretation of *Johannsen* in the dissent. Dissent Op. at 6.

Second, *Johannsen* made clear that § 1292(c)(2) applies only when there is a finding of patent infringement. *Johannsen*, 918 F.2d at 162 ("[I]f the patent owner loses at trial . . . § 1292(c)(2) is not applicable, there being no impending accounting."). There was a finding of patent infringement in *Majorette*. 798 F.2d at 1391. But in the present case, there was no finding of patent infringement, making *Majorette*'s analogy to § 1292(c)(2) inapplicable.

Third, *Majorette* preceded the Supreme Court's *Swint* decision, and so *Swint* supersedes *Majorette* to the extent that the two conflict. We disagree with the dissent's argument that *Swint* is distinguishable because the pendent jurisdiction at issue in *Swint* was "pendent party" jurisdiction and the appealable decision in *Swint* "was only appealable under the collateral order doctrine." Dissent Op. at 12-14. *Swint* discusses pendent jurisdiction generally, and the reasoning provided therein is broadly applicable to all pendent jurisdiction. *See Swint*, 514 U.S. at 40, 43-48. *Swint* is widely considered to have thrown "cold water on pendent appellate jurisdiction." *McCarter*, 540 F.3d at 653-54. Both the Supreme Court and this court have applied the tests from *Swint* to pendent jurisdiction generally, and not merely pendent party jurisdiction or jurisdiction pendent to a decision appeal-

able under the collateral order doctrine. *See Clinton*, 520 U.S. at 707 n.41 ("The Court of Appeals correctly found that pendent appellate jurisdiction over this issue was proper. The District Court's legal ruling that the President was protected by a temporary immunity from trial— but not discovery—was 'inextricably intertwined,' . . . with its suggestion that a discretionary stay having the same effect might be proper; indeed, 'review of the [latter] decision [is] necessary to ensure meaningful review of the [former] . . . .'" (brackets in original) (internal citations omitted)); *Entegris*, 490 F.3d at 1349 ("[W]e find that Pall's appeal of the contempt order is not 'inextricably intertwined' with Mykrolis' cross-appeal of the dissolution of the preliminary injunction. . . . [W]e find that exercising pendent jurisdiction is not appropriate with respect to Pall's appeal."); *Helifix*, 208 F.3d at 1345 ("We exercise our discretion to invoke pendent appellate jurisdiction over the interlocutory grant of summary judgment . . . . [T]he denial of the preliminary injunction and the grant of summary judgment are 'inextricably intertwined.'"). Thus, we see no basis upon which to limit *Swint* only to pendent party jurisdiction.

Finally, while the dissent observes that cases after *Swint* have used language different in degree from that present in *Swint*, including references to judicial efficiency, Dissent Op. at 8-9, 17-18, these cases typically rely on, refer to, or are consistent with the *Swint* tests. *See In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 382 & n.12 (3d Cir. 1997) (citing the *Swint* tests in a footnote and finding pendent appellate jurisdiction proper because the "two appeals rais[e] the identical legal challenge" and resolving one appeal resolves the other), *abrogated in part by Comuso v. Nat'l R.R. Passenger Corp.*, 267 F.3d 331, 339 (3d Cir. 2001); *Comstock Oil & Gas Inc. v. Alabama & Coushatta Indian Tribes*, 261 F.3d 567, 570-71 (5th Cir. 2001) (finding a party's jurisdictional arguments based on

*Swint* "compelling" and finding the case presented the "rare and unique circumstances" warranting the exercise of pendent jurisdiction because the decisions "involve overlapping issues of law and fact"); *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 549-51 (6th Cir. 2002) (noting the judicial efficiency interests "underlying the pendent appellate jurisdiction doctrine" after stating that "[u]nder the doctrine of pendent appellate jurisdiction . . . a court of appeals may, in its discretion, 'exercise jurisdiction over issues that are not independently appealable when those issues are "inextricably intertwined" with matters over which the appellate court properly and independently has jurisdiction'" (quoting *Chambers v. Ohio Dep't. of Human Servs.*, 145 F.3d 793, 797 (6th Cir. 1998) (citing *Swint*, 514 U.S. 35), *cert. denied,* 525 U.S. 964 (1998))); *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1157-58 (6th Cir. 1996) (exercising discretion to take pendent jurisdiction "in the interest of judicial economy" after discussing that the court's "discretionary exercise of pendent appellate jurisdiction in this case is consistent with that of other courts of appeals, which have interpreted dictum in *Swint* . . . as allowing pendent appellate jurisdiction where the appealable and non-appealable issues are 'inextricably intertwined'"); *Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486, 491 (7th Cir. 2001) (finding, after discussing *Swint*, that "Greenwell's malpractice claim against Aztar is entwined with Aztar's indemnity claim against the doctors . . . , and since we must decide the latter, we might as well decide the former at the same time and head off a second appeal"); *Mueller v. Auker*, 576 F.3d 979, 989-91 (9th Cir. 2009) (finding a failure to take jurisdiction would fly "in the face of efficient judicial administration," but relying on the "inextricably intertwined" test from *Swint* and quoting extensively from *Brennan*, 78 F.3d 1152). Even though the D.C. Circuit uses "more expansive language" regarding pendent jurisdiction, including "efficiency," the

D.C. Circuit has "so far largely confined the doctrine to cases that come within one or the other of the *Swint* conditions." *Kilburn*, 376 F.3d at 1133-34; *see Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 330 F.3d 523, 527 (D.C. Cir. 2003) (noting that pendent jurisdiction is not exercised "liberally," but will be invoked "in two circumstances: (1) 'when substantial considerations of fairness or efficiency demand it,' . . . such as when a non-appealable order is 'inextricably intertwined' with an appealable order, . . . or (2) when review of the former decision is 'necessary to ensure meaningful review of the latter.'" (quoting *Gilda Marx*, 85 F.3d at 679)). *But see Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026-27 (D.C. Cir. 1997) (citing *Swint*, but finding "the availability of pendent appellate jurisdiction is not limited to circumstances where claims are 'so closely related' that review of the former is necessary to, or will dispose of, review of the latter. *Gilda Marx*, 85 F.3d at 679. Considerations of fairness or efficiency may also justify the exercise of pendent appellate jurisdiction when the 'review will likely terminate the entire case, sparing both this court and the district court from further proceedings and giving the parties a speedy resolution.' *Id.*"). Despite the minor deviation in the D.C. Circuit, this court continues to follow the approach of the majority of its sister circuits and its own precedent in primarily relying on the *Swint* tests to determine whether pendent jurisdiction is appropriate.

Even if this court could take jurisdiction in the present case—which it cannot—the exercise of pendent jurisdiction is discretionary, and this court would decline to exercise its discretion in this case. *See Intel*, 455 F.3d at 1371. This court sees little judicial efficiency in hearing the non-final sanctions issue with the decision on the merits. While reversing the sanctions order could potentially eliminate a second appeal, affirming the sanctions

order could result in a separate appeal of the amount. This is a slender reed upon which to rest jurisdiction. Moreover, the sanctions order also covers Orenshteyn's counsel, who are at present unable to appeal the non-final order, further indicating that another appeal of the same sanctions order could follow even if this court did take jurisdiction.   Moreover, this court disagrees with the dissent that the district court "prudently" dealt with the problem of piecemeal litigation by waiting to see if this court would affirm its award *before* deciding the amount of that award.  Dissent Op. at 10.  The prudential way to avoid "piecemeal appeals" is for the district court to "promptly" hear and decide claims for attorney's fees; "[s]uch practice normally will permit appeals from fee awards to be considered together with any appeal from a final judgment on the merits."  *White*, 455 U.S. at 454 (footnote omitted).

Consistent with *Falana*, and following the Supreme Court's decision in *Swint*, we decline to exercise pendent jurisdiction over the appeal of the sanctions order in this case.   There is no indication that the order granting sanctions is inextricably intertwined with or necessary to review the decision on the merits for summary judgment. Therefore, we grant Citrix's motion.   Orenshteyn may appeal from a *final* sanctions determination in the ordinary course.

Accordingly,

IT IS ORDERED THAT:

Citrix's motion to dismiss the appeal of the district court's sanction order is granted.

FOR THE COURT


July 26, 2012                           /s/ Jan Horbaly
      Date                                Jan Horbaly
                               Clerk

cc:  Joseph J. Zito, Esq.
     Douglas J. Kline, Esq.

# United States Court of Appeals for the Federal Circuit

---

**ALEXANDER S. ORENSHTEYN,**

*Plaintiff-Appellant,*

v.

**CITRIX SYSTEMS, INC.,**

*Defendant-Appellee.*

---

2011-1308

---

Appeal from the United States District Court for the Southern District of Florida in Case No. 02-CV-60478, Judge Adalberto Jordan.

---

NEWMAN, *Circuit Judge*, dissenting.

On this appeal from the district court's final judgment of patent invalidity and accompanying sanctions, the defendant Citrix Systems moved to dismiss as premature that portion of the appeal that relates to the award of sanctions. My colleagues on this panel hold that the final judgment on the merits is appealable, but refuse to include the appeal of the accompanying sanctions because the attorney fees and costs have not been quantified. The final judgment of invalidity, and the attorney fees and costs awarded as sanctions, arise from the same factual and legal considerations, and will now require further redundancy of effort, by

yet a third panel of this court. The result is not only judicial inefficiency, at the district court as well as this court, but also unnecessary burdens and costs for the parties. From my colleagues' inappropriate disposition, I respectfully dissent.

DISCUSSION

This case started in 2002, when Mr. Orenshteyn, through prior counsel, sued Citrix for patent infringement. In 2003 the district court granted Citrix's motion for summary judgment of non-infringement, and levied sanctions against Mr. Orenshteyn under Rule 11, and against his counsel under Rule 11 and 28 U.S.C. §1927.

On appeal, this court reversed the summary judgment of non-infringement. The court also reversed the Rule 11 sanctions for failure to comply with the twenty-one day "safe harbor" provision of Rule 11(c)(2). *Orenshteyn v. Citrix Sys., Inc.*, 341 Fed. Appx. 621 (Fed. Cir. 2009). This court also vacated the §1927 sanction against counsel, holding that "only that portion of the applicable costs, expenses, and fees attributable to the . . . failure to correct testimony could be awarded." *Id.* at 628.

On remand, the district court reimposed the same sanctions, but instead of Rule 11 the court substituted its inherent powers, and also reapplied the §1927 sanction against counsel. The district court also granted Citrix's motion for summary judgment of patent invalidity, and entered final judgment. Mr. Orenshteyn, now with different counsel, filed this appeal from the final judgment and the sanctions. The district court, in declining to proceed with quantification of the sanctions, stated that "a finding in favor of Plaintiff on appeal could affect Citrix's entitlement to attorney fees and costs." *Order Staying Motion to Determine Fees and Costs*,

Doc. #375, Mar. 21, 2011.  My colleagues on this panel apparently deem this to be reversible error.  It is not.  The district court acted in accordance with precedent and logic, a pragmatic move toward resolution of this prolonged litigation.  In contrast, the panel majority now requires the district court to proceed with quantification, although the Federal Circuit has not reviewed the award of the sanction, and another Federal Circuit panel will be obliged to restudy the merits of the patent and the criticized litigation procedures.  The precedent of this court and of the Supreme Court is contrary to this inefficient process.

The controlling precedent of the Federal Circuit is *Majorette Toys, Inc. v. Darda, Inc.*, 798 F.2d 1390 (Fed. Cir. 1986), where this court, in precisely this situation, accepted the appeal of the judgment on the merits and the levy of attorney fee sanctions.  The court explained that "it makes no sense not to allow an appeal after validity, infringement, and damages are ascertained, and an award of attorney fees granted, even though the exact amount of attorney fees (and costs) has not been ascertained."  *Id.* at 1391.  The court reasoned that appeal of the final judgment, together with appeal of the accompanying award of sanctions, "harmonizes with the objectives of 28 U.S.C. §1292(c)(2)," the statute that grants our jurisdiction:

> (2) of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

The court in *Majorette Toys* stated that "allowing the present appeal will prevent loss of time and expense," for "quantification will be irrelevant if on the bifurcated appeal this court determines that it was an abuse of discretion to

award attorney fees at all." 798 F.2d at 1391. This reasoning is of particular force here, for there already exists a ruling of this court raising questions about the scope of the district court's sanctions. If the renewed award of sanctions is again reversed or modified – a possibility suggested by this court's prior opinion based on the same transgressions – the quantification of fees and costs will either be unnecessary or will have to be redone on still another remand.

In *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380 (Fed. Cir. 1998), this court again reviewed an unquantified award of attorney fees, consolidated with appeal of a finding of inequitable conduct. *Id.* at 1381 ("The second judgment [being appealed] held that Exxel's inequitable conduct causes the suit to be an 'exceptional case' within the meaning of 35 U.S.C. §285 (1994), entitling Akron Polymer to an award of its attorney fees, in an amount to be determined at the conclusion of this appeal."). This court reversed the judgment of inequitable conduct for lack of intent, and concluded that "without a basis to support the judgment of unenforceability, there is no foundation on which to conclude that this is an exceptional case under section 285." *Id.* at 1384.

In the cases relied upon by the panel majority, the sanctions were not appealed along with a final judgment on the merits, as they are here. In *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1345 (Fed. Cir. 2001), this court explained that "*Majorette Toys* analogized to the accounting exception of 28 U.S.C. § 1292(c)(2)," whereby quantification may be irrelevant. The court noted that: "this appeal is not an appeal from a judgment of patent infringement. Rather, it is an appeal from a judgment of an exceptional case, separate from the judgment in the action for patent infringement." 269 F.3d at 1343 n.2. In *Special Devices* only the issue of the award of attorney fees under 35 U.S.C. 285

was appealed; the court dismissed the appeal and explained that: "as in *Gilbreth* [*Gilbreth Int'l Corp. v. Lionel Leisure, Inc.*, 802 F.2d 469 (Fed. Cir. Nov. 2 and 28, 1983)], only attorney fees are at issue here. Accordingly, *View Engineering* is our closest precedent, not *Majorette Toys*." *Special Devices*, 269 F.3d at 1346. In *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 115 F.3d 962 (Fed. Cir. 1997), the sole issue of the appeal again was the unquantified Rule 11 sanction. Here, Mr. Orenshteyn appeals the final judgment on the merits of the patent action, and includes appeal of the sanction based on his pursuit of that action. This distinction is critical, as the court in *Majorette Toys* pointed out in distinguishing *Gilbreth*, *supra*, that "the *only* issue before the court in *Gilbreth* concerned attorney fees," such that there was no efficiency to be gained by review. 798 F.2d at 1392.

Citrix offers the argument that *Majorette Toys* allows review only when sanctions are awarded in favor of the patentee, and not when the award is in favor of the accused infringer. However, no basis for excluding the patentee from seeking review appears in that decision. *Majorette Toys* states that "Plaintiffs, appellees here, have moved to dismiss and/or remand the appeal on the ground that, because the judgment has not quantified attorney fees and costs, it is neither a final decision pursuant to 28 U.S.C. § 1295(a) nor an appealable interlocutory decision pursuant to 28 U.S.C. § 1292." 798 F.2d at 1391. The court ruled that when appeal is taken from a final judgment on the merits, the award of attorney fees and costs is also reviewable, although not quantified. In *Akron Polymer* this court reversed an unquantified award of attorney fees against the patentee along with reversal of a judgment of inequitable conduct. 148 F.3d at 1384.

My colleagues criticize *Majorette Toys* for analogizing to §1292, stating that the court had "no statutory basis upon which to draw such an analogy." Maj. op. at 8. This court has noted that "the judgment in *Majorette Toys* was actually a 'final decision' appealable under §1295, and the court's discussion of §1292(c)(2) was not necessary to its holding on jurisdiction." *Johannsen v. Pay Less Drug Stores Nw., Inc.*, 918 F.2d 160, 162 (Fed. Cir. 1990). Although not necessary to the holding, the analogy drawn in *Majorette Toys* is sound, and fully applicable here, for the same efficiency concerns that underlie §1292(c)(2) warrant allowing an award of attorney fees to be reviewed along with the final judgment on which that award is based. As we explained in *Majorette Toys*:

> [Q]antification will be irrelevant if on appeal this Court determines that it was an abuse of discretion to award attorney fees at all. Accordingly, allowing the present appeal will prevent the loss of time and expense, and the need to explore what sometimes may be sensitive attorney records, in the event the case is overturned on the merits or in the determination that attorney fees should be awarded. Moreover, allowance of the appeal here fully harmonizes with the objectives of 28 U.S.C. § 1292(c)(2). . . .

798 F.2d at 1391-92. This reasoning is fully applicable here, for quantification will again be irrelevant if the court determines, while reviewing the merits, that attorney fees should not have been awarded, such that "allowing the present appeal will prevent the loss of time and expense." *Id.* at 1391.

My colleagues also mistakenly state that *Majorette Toys* was overturned or superseded by *Swint v. County Chambers Commission*, 514 U.S. 35 (1995). Maj. op. at 9. My col-

leagues contend that in light of *Swint* judicial efficiency is no longer important. Maj. op. at 10. *Swint* did not so hold. Although the *Swint* Court decided not to review an unappealable interlocutory decision along with an appealable one, that decision was in part driven by the fact that the questions involved were "unrelated," 514 U.S. at 51, such that consolidated review would not be particularly efficient. *Swint* held that efficiency did not justify jurisdiction in that case, not that efficiency was no longer a relevant consideration, as the panel majority contends.

In resolving questions of appealability, considerations of judicial efficiency and economy are routinely at the forefront. *See Intermedics Infusaid, Inc. v. The Regents of the University of Minnesota*, 804 F.2d 129, 134 n.8 (Fed. Cir. 1986) ("The circuits have uniformly focused on the policy of judicial economy in deciding whether to review pendent orders and issues."). As we explained in *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1461 (Fed. Cir. 1990):

> An interlocutory order that ordinarily would not be appealable may be given discretionary appellate review when it is ancillary to other matters that are appealable. . . . Consideration is given to the extent to which the appealable order involves factors pertinent to the otherwise nonappealable order, such that judicial efficiency and the interest of justice are served by review.

These considerations remain important, as this court recognized six years after *Swint*, in *Special Devices*:

> From the very foundation of our judicial system the object and policy of the acts of Congress in relation to appeals and writs of error . . . have been to save the expense and delays of repeated appeals in the

same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.

269 F.3d at 1343 (Fed. Cir. 2001) (quoting *McLish v. Roff*, 141 U.S. 661, 665-66 (1891)).

The regional circuits also continue to recognize the important role of efficiency considerations in decisions on pendent appealability after *Swint*, both within and outside the context of attorney fees. *See, e.g.*, *Mueller v. Auker*, 576 F.3d 979, 989-91 (9th Cir. 2009) (exercising "pendent Jurisdiction," discussing *Swint*, and citing regional circuit cases for "convincing analysis – rendered in the 'interest of judicial economy'"); *In re Dyer*, 322 F.3d 1178, 1187 (9th Cir. 2003) ("Delaying review of the sanctions order would result in piecemeal litigation. . . . the opportunity to avoid piecemeal litigation weighs heavily in favor of our jurisdiction."); *National Railroad Passenger Corp. v. Expresstrak, L.L.C.*, 330 F.3d 523, 527 (D.C. Cir. 2003) ("This court . . . generally will invoke pendent jurisdiction . . . 'when substantial considerations of fairness or efficiency demand it'. . . ."); *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 308 F.3d 523, 551 (6th Cir. 2002) ("Our decision here [to exercise jurisdiction] is compelled by the interests of judicial efficiency underlying the pendent appellate jurisdiction doctrine."); *Greenwell v. Aztar Indian Gaming Corp.*, 268 F.3d 486, 491 (7th Cir. 2001) ("Greenwell's malpractice claim against Aztar is entwined with Aztar's indemnity claim . . . and since we must decide the latter, we might as well decide the former at the same time and head off a second appeal."); *Thornton v. General Motors Corp.*, 136 F.3d 450, 454 (5th Cir. 1998) ("[P]endent appellate jurisdiction [is] appropriate over the attorney fees sanction. . . . pendent review promotes judicial economy by providing both parties with a speedy resolution of the issues while allowing

for a 'sensible allocation of judicial resources.'"); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C. Cir. 1997) ("Considerations of fairness or efficiency may also justify the exercise of pendent appellate jurisdiction. . . ."); *Gilda Marx, Inc. v. Wildwood Exercise*, 85 F.3d 675, 678-79 (D.C. Cir. 1996) ("By choosing to entertain a pendent appeal, we may sometimes be able to forestall a second appeal, thus streamlining the judicial process," citing "the need for sensible allocation of judicial resources"); *Brennan v. Township of Northville*, 78 F.3d 1152, 1158 (6th Cir. 1996) ("As this appeal presents the quintessential case for application of pendent appellate jurisdiction, we exercise our discretion to do so in the interest of judicial economy.").

Well after *Swint*, leading commentators continue to advocate reviewing an unquantified award of fees along with a final judgment on the merits, "whenever the circumstances suggest that obvious efficiency advantages can be gained on appeal without interfering with ongoing proceedings in the trial court." Wright & Miller, *Federal Practice & Procedure* §3915.6. Commentators have correctly noted that "attorney fee questions often require substantial litigation before the district judge and turn on matters closely bound up with the judgment on the merits," such that courts may "expand the scope of the appeal on the merits to permit review of a determination to award attorney fees even though the amount has not yet been set." *Id.* As explained by Wright and Miller:

> In extending review, commonly under the label of pendent jurisdiction, courts have tended to look for and to emphasize a strong relationship between the appealable order and the additional matters swept up into the appeal. Illustrations have been provided by appeals taken under a variety of expansive finality theories. Perhaps the simplest setting is pro-

vided by review of an order awarding attorney fees on appeal from a judgment final with respect to all matters other than determination of the fee amount. The trial court, appellate court, and parties all may be better off if the appeal from an almost completely final judgment can resolve the fee issue as well.

*Id.* at §3937.

In *White v. New Hampshire Department of Employment Security*, 455 U.S. 445 (1982), the Supreme Court held that "an outstanding fee question does not bar recognition of a merits judgment as 'final' and 'appealable,'" and recognized that "'piecemeal' appeals of merits and fee questions are generally undesirable." 455 U.S. at 452 n.14. The Court noted that "district courts have ample authority to deal with this problem." *Id.* The district court prudently exercised such authority here, declining to proceed with quantification of the sanctions until the propriety of those sanctions had been reviewed on appeal. *Order Staying Motion to Determine Fees and Costs*, Doc. #375, Mar. 21, 2011 ("a finding in favor of Plaintiff on appeal could affect Citrix's entitlement to attorney fees and costs").

Contrary to the majority's argument, *Swint* does not support the panel majority's ruling, and did not overrule or supersede *Majorette Toys*. In *Swint*, in the wake of successive raids on a nightclub in Chambers County Alabama, the plaintiffs sued the Chambers County Commission, along with three individual police officers, for alleged civil rights violations. The individual defendants moved for summary judgment based on qualified immunity, and the commission moved for summary judgment arguing that the sheriff who authorized the raids was not an agent of the county commission. Both motions were denied. Invoking the rule that an order denying qualified immunity is immediately ap-

pealable before trial under the collateral order doctrine, *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), the individual defendants immediately appealed. Although the denial of the commission's motion was not otherwise appealable, the Eleventh Circuit considered the commission's appeal under the doctrine of pendent appellate jurisdiction, and reversed, granting the commission's motion to dismiss because the sheriff was not a policymaker for the county in the area of law enforcement. The Supreme Court held that the Eleventh Circuit should not have allowed the commission to ride the jurisdictional coattails of the individual defendants' qualified immunity appeal.

*Swint* is distinguished from this case, and from *Majorette Toys*, for at least three reasons. First, as recognized by the Court, the commission's appeal in *Swint* was "unrelated" to the individual defendants' qualified immunity appeal, such that no efficiency would be gained by consolidated review. 514 U.S. at 51 ("The individual defendants' qualified immunity turns on whether they violated clearly established federal law; the county commission's liability turns on the allocation of law enforcement power in Alabama. The Eleventh Circuit's authority immediately to review the District Court's denial of the individual police officer defendants' summary judgment motions did not include authority to review at once the unrelated question of the county commission's liability.").

Here, by contrast, Mr. Orenshteyn's appeal is from the final judgment on the merits of a patent infringement action, and the sanction is for his prosecution of the merits; the issues are closely linked and entwined, such that efficiency counsels in favor of consolidated appeal. *See Greenwell*, 268 F.3d at 491 ("this is one of those cases in which allowing an interlocutory appeal prevents rather than produces piecemeal appeals, while if the liability and in-

demnity issues did not overlap there would be only a limited economy from deciding them in one rather than two appeals").

Second, there was no final judgment in *Swint*; the qualified immunity decision was only appealable under the collateral order doctrine, which the Court explained as follows:

> In *Cohen,* we held that § 1291 permits appeals not only from a final decision by which a district court disassociates itself from a case, but also from a small category of decisions that, although they do not end the litigation, must nonetheless be considered "final." *Id.* at 546. That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action. *Ibid.*

514 U.S. at 41-42. In its decision against pendent appellate jurisdiction, the Court emphasized that the appealable decision was only appealable because it fell into that "small category," such that the scope of the appeal should not be enlarged:

> If courts of appeals had discretion to append to a *Cohen*-authorized appeal from a collateral order further rulings of a kind neither independently appealable nor certified by the district court, then the two-tiered arrangement §1292(b) mandates would be severely undermined.

514 U.S. at 47. *See also* 514 U.S. at 49-50 ("a rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay *Cohen*-type collateral orders into multi-issue interlocutory appeal tickets."); Wright & Miller, *Federal Practice & Procedure* §3937 ("Collateral order doctrine presents greater challenges to any theory of pendent appeal jurisdiction."). Here, by contrast, there was a final judgment on the merits; Mr. Orenshteyn is not seeking to "append to a *Cohen*-authorized appeal," nor is he asking the court for a "multi-issue interlocutory appeal ticket."

Third, the Court in *Swint* considered "pendent party" appellate jurisdiction, and the Court emphasized that point:

> In the instant case, the Eleventh Circuit asserted not merely pendent appellate jurisdiction, but pendent *party* appellate jurisdiction: The court appended to its jurisdiction to review the denial of the *individual defendants'* qualified immunity motions jurisdiction to review the denial of the *commission's* summary judgment motion.

514 U.S. at 48 n.6. *See also* 514 U.S. at 51 ("there is no 'pendent party' appellate jurisdiction of the kind the Eleventh Circuit purported to exercise"); *Kaluczky v. City of White Plains*, 57 F.3d 202, 207 (2d Cir. 1995) ("The Supreme Court has recently cautioned that . . . a claim involving a 'pendent party' is an 'unrelated question' that cannot be resolved under pendent jurisdiction. *See Swint* . . . . However, the Court did not otherwise narrow the scope of pendent jurisdiction"); *Mueller*, 576 F.3d 979, 991 (9th Cir. 2009) (quoting this portion of *Kaluczky*). Here, Mr. Orenshteyn seeks merely to appeal the award of attorney fees

against himself, along with the judgment against himself on the merits, so there is no pendent party issue.[1]

The issue here is not whether to review a non-final decision against one defendant, along with a largely unrelated interlocutory decision against a different defendant appealable only under the collateral order doctrine, but whether to permit inclusion of the sanction levied against Mr. Orenshteyn along with appeal of the final judgment against Mr. Orenshteyn. The Court in *Swint* explicitly narrowed its ruling, stating that it "need not definitively or preemptively settle here whether or when it may be proper for a court of appeals, with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appealable." *Id.* at 50-51. *Swint* does not decide the question here, and does not take, or suggest, any position that could be construed asoverruling *Majorette Toys*.

The majority states that *Swint* is "widely considered to have thrown 'cold water on pendent appellate jurisdiction,'" op. at 9, citing a case from the Seventh Circuit for this proposition. The doctrine is alive and well post-*Swint*. As explained by the Seventh Circuit itself, "the doctrine clearly still lives, for it has been invoked by the Supreme Court since *Swint*, in *Clinton v. Jones*, 520 U.S. 681, 707 n.41 (1997), where the Court said that 'the Court of Appeals correctly found that pendent appellate jurisdiction over the issue was proper.'" *Greenwell*, 268 F.3d at 491.

---

[1] The majority sees "no basis upon which to limit *Swint* only to pendent party jurisdiction." Maj. op. at 10. *Swint* is not limited "only to pendent party jurisdiction," but this is one of the three important bases for distinguishing this case and *Majorette Toys* from *Swint*, as explained *supra*.

*Swint* did not hold, as the majority contends, that pendent appellate jurisdiction is proper only where the issues are "inextricably intertwined," or where review of one is "necessary to review" the other. Maj. op. at 4. *See Gilda Marx, Inc. v. Wildwood Exercise*, 85 F.3d 675, 679 n.4 (D.C. Cir. 1996) ("While we agree that *Swint* counsels caution in the exercise of pendent appellate jurisdiction, we do not think it meant to prescribe a definitive or exhaustive list of conditions."); Wright & Miller, *Federal Practice & Procedure* §3937 ("What is needed is a flexible, pragmatic doctrine that defines the scope of the appeal in the way that best meets the purposes of the final judgment rule.").

The majority's mistake is apparent when the relevant language from *Swint* is shown in context:

> We need not definitively or preemptively settle here whether or when it may be proper for a court of appeals, with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appealable. . . . The parties do not contend that the District Court's decision to deny the Chambers County Commission's summary judgment motion was inextricably intertwined with that court's decision to deny the individual defendants' qualified immunity motions, or that review of the former decision was necessary to ensure meaningful review of the latter. *Cf.* Kanji, The Proper Scope of Pendent Appellate Jurisdiction in the Collateral Order Context, 100 Yale L. J. 511, 530 (1990) ("Only where essential to the resolution of properly appealed collateral orders should courts extend their *Cohen* jurisdiction to rulings that would not otherwise qualify for expedited consideration."). Nor could the parties so argue. The individual defendants' qualified immunity turns on whether they

> violated clearly established federal law; the county commission's liability turns on the allocation of law enforcement power in Alabama.

*Swint*, 514 U.S. at 50-51. Thus the majority's purported "*Swint* tests" derive from one sentence where the Court was explaining what the parties did not contend. In the immediately preceding sentence, the Court stated that it was not creating a definitive test. *Id.* ("We need not definitively or preemptively settle here. . . .").

Further, the citation following the sentence from which the majority derives its "test" is to a law review article on "the proper scope of pendent appellate jurisdiction *in the collateral order context*," and the quotation from that article opines on when courts should "extend their *Cohen* jurisdiction to rulings that would not otherwise qualify." The final sentence in the paragraph emphasizes the lack of relation between the issues underlying the two appeals. Thus *Swint* held, in the pendent party context, that an appellate court may not extend its *Cohen* jurisdiction to reach an "unrelated question." *Id.* at 51. This case involves neither *Cohen* jurisdiction nor pendent parties, and the issues are closely related and entwined, as discussed *supra*. As such, exercising jurisdiction here would not "contradict[] the central holding of *Swint*," nor would it be "inconsistent with the standards established in *Swint*," as the majority contends. Maj. op. at 4, 7.

Courts have not limited pendent appellate jurisdiction to the conditions of the majority's test. This court continues to exercise pendent appellate jurisdiction where the issues are "closely interrelated factually," as they are here. *See, e.g.*, *Heliflix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1345 (Fed. Cir. 2000) ("We exercise our discretion to invoke pendent appellate jurisdiction over the interlocutory grant

of summary judgment 'because it is closely interrelated factually' to the preliminary injunction.") (quoting *Gerber Garment Tech, Inc. v. Lectra Sys., Inc.*, 919 F.2d 683, 686 (Fed. Cir. 1990), and citing *Clinton v. Jones*, 520 U.S. at 707 n.41, as well as *Swint*); *Intel Corp. v. Commonwealth Scientific & Indus. Research Org.*, 455 F.3d 1364 (Fed. Cir. 2006) ("This court, however, has the power to exercise pendent appellate jurisdiction over other issues," citing *Swint*); *Entergis, Inc. v. Pall Corp.*, 490 F.3d 1340, 1348-49 (Fed. Cir. 2007) (recognizing that pendent appellate jurisdiction is available "in appropriate circumstances," but declining to exercise it where there was "no overlap or impact between the issues on appeal"); *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380 (Fed. Cir. 1998) (reversing an unquantified award of attorney fees along with the closely related merits issue). As this court has stated, "the major factor in determining whether to exercise this [pendent appellate] jurisdiction is the extent that review of the appealable order will involve consideration of factors relevant to the otherwise nonappealable order." *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 846-47 (Fed. Cir. 2008) (quoting *Intermedics*, 804 F.2d at 134).

Nor do the regional circuits limit themselves to the conditions of the majority's test. The regional circuits continue to recognize and apply pendent appellate jurisdiction after *Swint* in situations such as this, where doing so "furthers interests of fairness and efficiency," or where the issues are "closely related," "entwined," or "involve overlapping issues of law and fact." *See, e.g.*, *Mueller*, 576 F.3d at 989-91 (9th Cir. 2009) (exercising jurisdiction over a partial summary judgment pendent to a denial of qualified immunity, reasoning that a "holding that Rodgers must wait to appeal the adverse ruling about him not only makes no sense, but it flies right in the face of efficient judicial administration"); *Greenwell*, 268 F.3d at 491 (7th Cir. 2001) (reviewing

Greenwell's malpractice claim pendent to a third party's indemnity claim, because the issues are "closely related" and "entwined"); *Comstock Oil & Gas Inc. v. Alabama & Coushatta Indian Tribes*, 261 F.3d 567, 571 (5th Cir. 2001) ("Because the sovereign immunity challenges of the oil companies and the tribal council members stem from the same underlying lawsuit and involve overlapping issues of law and fact, we find that this case presents rare and unique circumstances sufficient for this court to exercise its pendent jurisdiction."); *Jungquist*, 115 F.3d at 1026 (D.C. Cir. 1997) (reviewing non-immunity claims pendent to an interlocutory appeal from a denial of immunity, because doing so "furthers interests of fairness and efficiency," and noting that "the availability of pendent appellate jurisdiction is not limited to circumstances where claims are 'so closely related' that review of the former is necessary to, or will dispose of, review of the latter"); *In Re Tutu Wells Contamination Litigation*, 120 F.3d 368, 382 (3rd Cir. 1997) (exercising pendent party appellate jurisdiction and explaining that the "doctrine of pendent appellate jurisdiction, in its broadest formulation, allows an appellate court in its discretion to exercise jurisdiction over issues that are not independently appealable but that are intertwined with issues over which the appellate court properly and independently exercises its jurisdiction"); *Brennan v. Township of Northville*, 78 F.3d 1152, 1158 (6th Cir. 1996) (reviewing a partial summary judgment pendent to a denial of qualified immunity, "in the interest of judicial economy"). These cases show that exercise of pendent appellate jurisdiction is not limited to situations where the issues are "inextricably intertwined," or "necessary to review," as the majority contends.

The majority is incorrect in stating that the circuits "are in general agreement that an unquantified award of attorney fees does not usually warrant the exercise of pendent

jurisdiction." Maj. op. at 7. Numerous courts, including this court, have reviewed unquantified fee awards since *Swint*, or recognized the power to do so. *See, e.g.*, *Akron Polymer*, 148 F.3d 1380 (Fed. Cir. 1998) (discussed *supra*, reviewing an unquantified fee award pendent to a judgment of unenforceability for inequitable conduct); *Thornton*, 136 F.3d at 454 (5th Cir. 1998) (reviewing an unquantified award of attorney fees pendent to a Rule 11 suspension sanction, noting that "pendent review promotes judicial economy"); *In re Dyer*, 322 F.3d at 1187 (9th Cir. 2003) (reviewing an unquantified sanctions order along with the merits because "[d]elaying review of the sanctions order would result in piecemeal litigation"); *Gilda Marx*, 85 F.3d at 678 (D.C. Cir. 1996) (recognizing that "[r]eview of the [unquantified] attorney's fee order is certainly within our Article III power," but declining to exercise its discretion to review the unquantified award pendent to a final judgment on the merits where the "scope of the fee award" was "not entirely clear," such that the court was "[w]ithout a reason to believe that the interests of judicial economy and fairness to the parties would be served"); *Hibiscus Associates Ltd. v. Bd. Of Trs. Of the Policemen & Firemen Ret. Sys.*, 50 F.3d 908, 921-22 (11th Cir. 1995) ("The amount of the fee award has not been determined . . . . Although we have discretion as an exercise of pendent appellate jurisdiction to review the issue . . . we decline to exercise that discretion here."); *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 289 F. App'x. 927, 932 (6th Cir. 2008) (nonprecedential) (exercising pendent appellate jurisdiction over an unquantified award of litigation expenses).

In contrast with the cases selected by the panel majority, Mr. Orenshteyn's appeal is from the final judgment on the merits of the patent, and the sanction is for his prosecu-

tionof the merits.  *Majorette Toys* is controlling precedent,[2] and supports accepting appeal of the sanction along with appeal of the final judgment, for the district court's final judgment presents these issues for appeal.

The panel majority has chosen to accept only the portion of the appeal relating to the final judgment of invalidity, and to separate and remand the portion directed to the sanction, for further proceedings that may become irrelevant.  In the prior appeal of this case, after the district court's summary judgment on the issue of infringement and the initial award of this sanction, a panel of this court commented that the district court awarded sanctions be-

---

[2]    I take note of the recent decision in *Falana v. Kent State Univ.*, 669 F.3d 1349 (Fed. Cir. 2012), where a panel of this court departed from *Majorette Toys*.  However, the earlier precedent controls until it is overruled *en banc*.  *See Newell Cos. v. Kennedy Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("Where there is direct conflict, the precedential decision is the first.").  Further, *Falana* erroneously stated that the "appeal in *Majorette Toys* was based on 28 U.S.C. §1292," attempting to distinguish *Majorette Toys* on the ground that jurisdiction in *Falana* was based on §1295 instead of §1292.  *Id.* at 1361-62.  This distinction fails, as jurisdiction in *Majorette Toys* was based on §1295.  *See Johannsen*, 918 F.2d at 162 ("the judgment in *Majorette Toys* was actually a 'final decision' appealable under §1295, and the court's discussion of §1292(c)(2) was not necessary to its holding on jurisdiction").  *Falana* also stated that "*Swint* supersedes *Majorette*," while ignoring this court's post-*Swint* decision in *Akron Polymer*, discussed *supra*, where this court again reviewed an unquantified award of attorney fees along with a final judgment on the merits.  Finally, "[w]hether an appellate court exercises this 'doctrine of pendent jurisdiction at the appellate level' is a matter of discretion."  *Intermedics*, 804 F.2d at 134.  Although the court in *Falana* chose not to exercise this discretion, that does not bar us from doing so when sound discretion so counsels.

cause "this case was not litigated well by Orenshteyn and his counsel," *Orenshteyn v. Citrix*, 341 F. Appx. at 626. The prior panel vacated that award of sanctions, with the admonition that "the amount [of extra cost for multiplication of proceedings] would appear to be a fraction of the total litigation cost." *Id.* at 622. The present sanctions are for the same transgressions, and will again require review of the merits of the patent counts and litigation procedures. No advantage or convenience appears in separating these aspects, and every advantage and convenience in combining them.

As now postured by the panel majority, this court will review only the summary judgment of patent invalidity. Meanwhile, the district court will be ordered to return to the case and perform the accounting – without knowing the views of the Federal Circuit on the foundation of the sanction or its scope. Judicial efficiency is adversely affected not only for the Federal Circuit, but also for the district court. However, this burden is avoided if this court simply follows precedent and reviews the appealed sanction along with the appealed final judgment.

But for the recent aberration in *Falana*, *see* n.2 *supra*, Federal Circuit precedent has been consistent. In *Majorette Toys*, and in *Akron Polymer*, the court received appeal of a final judgment on the merits, and accepted the accompanying appeal of the sanction although the monetary amount of the sanction had not been determined. And where the unquantified sanction was the only issue on appeal, as in *View Engineering* and *Special Devices*, the court held that the issue was not ripe for appeal. Precedent and efficiency support acceptance of this appeal of the merits together with the sanction.